United States District Court
Southern District of Texas
FILED

OCT 2 0 2003

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FIRST NATIONAL BANK,<br>Plaintiff | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. **B-03-183** |
| CAPI SANTOS, INC., JOSE LEOPOLDO<br>TORRES, JOSE SANTOS TORRES,<br>JOSE SANTOS TORRES, JR., and the<br>F/V EL CAPI, her engines, nets, tackle,<br>apparel, and furniture, etc., in rem,<br>Defendants | §<br>§<br>§<br>§<br>§<br>§ | IN ADMIRALTY |

---

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW FIRST NATIONAL BANK, Plaintiff herein, complaining of CAPI SANTOS, INC., *in personam*, the owner of the named vessel, F/V EL CAPI, her engines, nets, tackle, apparel, and furniture, *etc. in rem*, and JOSE LEOPOLDO TORRES, JOSE SANTOS TORRES (also known as JOSE S. TORRES and JOSE SANTOS TORRES, SR.), and JOSE SANTOS TORRES, JR. (also known as JOSE S. TORRES AND JOSE SANTOS TORRES), individually, herein collectively referred to as Defendants, and for causes of action would respectfully show unto the Court the following:

I.

## PARTIES

1. Plaintiff is a national banking association, with an office and its principal place of business at 701 E. Levee St., Brownsville, Cameron County, Texas 78520.

---

Plaintiff's Complaint
W:\02303 *1\' TMB/VPG

2.      Defendant CAPI SANTOS, INC., a Texas corporation, having its principal place of business in Cameron County, Texas, may be served with process by serving its registered agent for process JOSE SANTOS TORRES at its registered address, 2214 Ringgold Street, Brownsville, Texas 78520.

3.      Defendant JOSE LEOPOLDO TORRES is an individual, resident of Cameron County, Texas, who may be served with process at his residence, 2214 Ringgold Street, Brownsville, Texas 78520.

Defendant JOSE SANTOS TORRES is an individual, resident of Cameron County, Texas, who may be served with process at his residence, 2214 Ringgold Street, Brownsville, Texas 78520.

Defendant JOSE SANTOS TORRES, JR. is an individual, resident of Cameron County, Texas, who may be served with process at his residence, 2214 Ringgold Street, Brownsville, Texas 78520.

4.      Defendant F/V EL CAPI is a fishing vessel, believed to be wholly owned by Defendant CAPI SANTOS, INC. On information and belief the F/V EL CAPI is now or during the pendency of this action will be, within this District and which may be found for service of process and arrested at the Zimco Marine Railway, End of Gator Court, in the Shrimp Turning Basin, Brownsville, Texas.

II.

## JURISDICTION AND VENUE

5.      This is a case involving admiralty and maritime jurisdiction within the meaning of Rule 9(h) and Supplemental Rule C of the Federal Rules of Civil Procedure. This Court has subject matter jurisdiction under 46 USC §31342 and 28 USC §1333.    The



Defendant vessel is, or will be, during the pendency of the process within this district and within the jurisdiction of this court. Suits on promissory notes included in this action are within the pendant jurisdiction of this court.

III.

## FACTS OF THE CASE

6.     On or about the 20th day of February, 2002, CAPI SANTOS, INC. executed and delivered to FIRST NATIONAL BANK, a promissory note bearing such date and year in the principal amount of $168,750.00 and thereby promised to pay to the order of FIRST NATIONAL BANK, the principal sum of $168,750.00, plus accrued interest as stated in the Note.

A true and correct copy of the Note is attached hereto as **Exhibit "A"**.

7.     The Note further provides that the holder is authorized to declare all of the remainder of said debt due and payable, upon the happening of any of several events specified in the first preferred mortgage described in paragraph 8 below such as the "default in the punctual payment of the principal of the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Sections, 3, 4, 5, 6, 8 and 10 of Article I" of the First Preferred Mortgage.

8.     At the time of the execution of the note CAPI SANTOS, INC. was the sole owner of the F/V EL CAPI, Official Number 576907. To secure the payment of said note, CAPI SANTOS, INC. duly executed and delivered to FIRST NATIONAL BANK a first preferred mortgage upon said vessel, of even date with the promissory note, mistakenly dated on its face as February 20, 2001. Said date is corrected in the Modification Note



dated April 5, 2003 described below.   A true and correct copy of the mortgage is attached hereto as **Exhibit "B"**.

9.      In pertinent part, the mortgage provides that in the event of default in the payment of the principal of the note or any installment thereof the holder may declare the principal of said note and all accrued interest to be due and payable forthwith, after which it shall bear interest at 10% per annum.

10.     On or about February 20, 2002, Defendants, JOSE LEOPOLDO TORRES and JOSE SANTOS TORRES each executed his personal guarantee of the Note which provided in pertinent part:

> "the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness").

Copies of the guaranties executed by JOSE LEOPOLDO TORRES and JOSE SANTOS TORRES are attached hereto collectively as **Exhibit "C"** and incorporated by reference as if fully set forth at length.

11.     A Deed of Trust was executed on or about February 20, 2002 by Defendant JOSE SANTOS TORRES, to further secure the indebtedness to FIRST NATIONAL BANK, and over one year later stated the property encumbered by the Deed of Trust was owned by JOSE SANTOS TORRES, JR.  The property named in the deed of trust is as follows:

> The North 50.00 acres of a 321.7 acre parcel out of TRACT 47, SUBDIVISION "G", SHARE 19, Espiritu Santo Grant, Cameron County, Texas;



COMMENCING at the point of intersection of the West line of TRACT 47, SUBDIVISION "G", SHARE 19, Espiritu Santo Grant, Cameron County, Texas, and the centerline of San Fernando Road;

THENCE, along the West line of said TRACT 47, North 04 degrees 30 minutes East, a distance of 17,234.15 feet to the point of beginning, being the Northwest corner of the parcel herein described;

THENCE, along the North line of said 321.7 acre parcel, South 85 degrees 30 minutes East, a distance of 1,466.50 feet to a point in the East line of said TRACT 47;

THENCE, along the East line of said TRACT 47, South 04 degrees 39 minutes 15 seconds East, a distance of 1,487.20 feet to the Southeast corner of this parcel;

THENCE, parallel with the North line of said 321.7 acre parcel, North 85 degrees 30 minutes West, a distance of 1,462.50 feet to a point in the West line of said TRACT 47;

THENCE, along the West line of said TRACT 47, North 04 degrees 30 minutes East, a distance of 1,487.20 feet to the point of beginning;

CONTAINING 50.000 acres.

A true and correct copy of the Deed of Trust duly recorded in the Official Records of Cameron County, Texas is attached hereto as **Exhibit "D"** and incorporated herein by reference.

12.    On the 5th of April, 2003, CAPI SANTOS, INC. executed a modification of the promissory note, said modification extending the maturity date of the loan to January 5, 2009. A copy of the modification is attached hereto as **Exhibit "E"** and incorporated herein as if fully set forth at length.

13.    The Defendants have defaulted in the payment of the Note.

14.    Plaintiff is the legal owner and holder of such note and the entity entitled to enforce it. Defendants failed and refused to pay same and the Note, having matured



and become due and payable by virtue of such default, has been placed in the hands of the undersigned attorney for collection, Defendants agreeing to pay Plaintiff's attorney's fees as provided in the Note.

15.    Defendants are indebted to Plaintiff in the principal amount of $144,642.00 plus accrued interest in the amount of $7,557.52 through October 20, 2003, and such interest as may accrue thereafter at the rate of ten (10%) percent until paid.  Interest continues to accrue at the rate of $38.1694 per day.

16.    Plaintiff has and claims a maritime lien against the Defendant vessel in the amount of the accelerated principal and interest due to date plus default interest as stated in the Note and attorney's fees and costs of court.

IV.

The F/V EL CAPI is presently on the railway at Zimco Marine, Inc. at the Shrimp Turning Basin at the Port of Brownsville undergoing repairs.   In order to preserve Debtor's equity in the collateral, the value of the vessel and to protect it from deterioration and loss of value if not maintained, Plaintiff requests that the repairs to the vessel be allowed to continue to completion.    Plaintiff further requests that the expenditure to complete the repairs to the vessel be added to the total amount due to Plaintiff as provided in the first preferred mortgage.

V.

### FACTS OF THE CASE

17.   *Note and Security Agreement.* Attached to this complaint as **Exhibit "F"** is a copy of a note executed by Defendant JOSE SANTOS TORRES.  Plaintiff is the owner and holder of this note and is entitled to receive all money due under its terms.

---



To secure the debt created by the note, Defendant executed a security agreement granting Plaintiff a security interest in the following motor vehicle:

1998 Ford Ranger, VIN#1FTYR10U6WUB11896

The security agreement is incorporated in the note attached as Exhibit F and incorporated herein by reference the same as if fully copied and set forth at length.

18.    *Default.* Defendant defaulted in paying the note. Plaintiff has accelerated the debt according to the terms of the note. There is currently due the sum of $1,396.17 plus accrued interest of $53.75 through October 20, 2003, and such interest as may accrue thereafter at the rate provided for in the note.  Interest continues to accrue at the rate of $.6980 per day.

19.    *Conditions Precedent.* All conditions precedent have been performed or have occurred.

VI.

### FACTS OF THE CASE

20.   *Note and Security Agreement.* Attached to this complaint as **Exhibit "G"** is a copy of a note executed by JOSE SANTOS TORRES.  Plaintiff is the owner and holder of this note and is entitled to receive all money due under its terms.

To secure the debt created by the note, Defendants JOSE SANTOS TORRES executed a Deed of Trust, Security Agreement-Financing Statement (Commercial) granting Plaintiff a security interest in the following property:

Lot Twenty-Two (22), BAREDA-JARDIN SUBDIVISION PHASE I, Cameron County, Texas, according to the map or plat thereof recorded in Cabinet I, Pages 1347B-1348A, Map Records, Cameron County, Texas

The Deed of Trust, Security Agreement-Financing Statement (Commercial) is attached hereto as **Exhibit "H"** and incorporated herein by reference the same as if fully copied and set forth at length.

21.    *Default.* Defendants defaulted in paying the note. Plaintiff has accelerated the debt according to the terms of the note. There is currently due the sum of $24,202.35 plus accrued interest of $502.86 through October 20, 2003, and such interest as may accrue thereafter at the rate provided for in the note. Interest continues to accrue at the rate of $7.3951 per day.

22.    *Conditions Precedent.* All conditions precedent have been performed or have occurred.

VII.

**ATTORNEY'S FEES**

23.    Plaintiff would further show the court that by reason of the Defendants' defaults and failure to cure their defaults upon demand, Plaintiff has been required to retain the services of the undersigned attorney and is entitled to recoup reasonable attorney's fees in connection with the collection of said promissory note and foreclosure of its preferred mortgage. Defendants agreed in the Note, and then the Modification Note given in renewal, but not in extinguishment of the note dated February 20, 2002, and in the various guaranties to pay attorney's fees as provided in Exhibits A and E. Defendant JOSE SANTOS TORRES has agreed to pay reasonable attorney's fees for collection in case of default of the additional promissory notes, as shown in Exhibits F and G.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays:

---

**Plaintiff's Complaint**                                              **Page 8 of 11**
W:\02303 *1\* TMB/VPG



A.  that process in due form of law according to the rules and practice of this court in causes of maritime and admiralty jurisdiction issue against the vessel the F/V EL CAPI, her engines, tackle, *etc.*, citing all persons claiming any interest to appear and answer on oath all and singular the matters stated above;

B.  that process be issued against the Defendant CAPI SANTOS, INC., Defendant Vessel and Defendant individuals named herein, and that said Vessel, her engine, tackle, apparel, *etc.* and all other necessaries thereunto belonging and appertaining, no matter where found, be condemned and sold to pay the demands and claims aforesaid with interest;

C.  that Plaintiff's claim under the February 20, 2002 promissory note and its modification and renewal dated April 5, 2003 be established as a maritime lien in the amount due against the named Defendant Vessel;

D.  that Plaintiff be granted foreclosure of Plaintiff's security interest in the collateral described in paragraph 11;

E.  that Plaintiff recover the full amount of the indebtedness from the *in personam* defendant, CAPI SANTOS, INC. and guarantor Defendants JOSE LEOPOLDO TORRES and JOSE SANTOS TORRES;

F.  that Plaintiff recover from Defendant JOSE SANTOS TORRES, the sum of $1,396.17 plus interest as stated in the note and security agreement;

G.  that Plaintiff be granted foreclosure of Plaintiff's security interest in the collateral described in paragraph 17;

H.  that Plaintiff recover from Defendant JOSE SANTOS TORRES the sum of $24,202.35 plus interest as stated in the note and security documents securing the note;

I.  that Plaintiff be granted foreclosure of Plaintiff's security interest in the collateral described in paragraph 20;

J.  that Plaintiff recover prejudgment and postjudgment interest as provided by the terms of the Notes, security agreements, and law;

K.  that Plaintiff recover reasonable attorney's fees as provided in the notes, security agreements and law;

L.  that Plaintiff recover costs of court; and

M.  for such other and further relief to which Plaintiff may be justly entitled.

Respectfully Submitted,

T. MARK BLAKEMORE
SBN: 02431800
Federal Admn. No. 1915

ATTORNEY FOR PLAINTIFF

T. MARK BLAKEMORE
Attorney, Counselor and Mediator
835 E. Levee St., 6th Floor
Brownsville, TX 78520-5101
(956) 541-5900-phone
(956) 541-5905-facsimile
E-mail: tmblakemore@tmb-atty.com

## **VERIFICATION**

THE STATE OF TEXAS        §
                                             §

COUNTY OF CAMERON         §

BEFORE ME, the undersigned authority, on this day personally appeared, CARLOS M. BODDEN, who, being by me first duly sworn, deposed and said:

     "My name is CARLOS M. BODDEN. I a loan officer of FIRST NATIONAL BANK, Plaintiff in the above and foregoing entitled and numbered action. In my capacity, I am familiar with the operations and billing records of FIRST NATIONAL BANK. I have read the foregoing Plaintiff's Complaint and the contents thereof are true and correct and within my own personal knowledge."

     FURTHER AFFIANT SAITH NOT.



_____
CARLOS M. BODDEN

     SWORN TO AND SUBSCRIBED BEFORE ME by the said, CARLOS M. BODDEN, Loan Officer of FIRST NATIONAL BANK which witness my hand and seal of office this 20th day of October, 2003.

T. MARK BLAKEMORE
Notary Public, State of Texas
My Commission Expires 9-14-2005

_____
Notary Public, State of Texas

---

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FIRST NATIONAL BANK,<br>**Plaintiff** | §<br>§<br>§ | |
| **v.** | §<br>§ | CIVIL ACTION NO._____ |
| CAPI SANTOS, INC., JOSE LEOPOLDO<br>TORRES, JOSE SANTOS TORRES,<br>JOSE SANTOS TORRES, JR., and the<br>F/V EL CAPI, her engines, nets, tackle,<br>apparel, and furniture, etc., in rem,<br>**Defendants** | §<br>§<br>§<br>§<br>§<br>§<br>§ | **IN ADMIRALTY** |

## EXHIBITS TO PLAINTIFF'S COMPLAINT

| +PLF.<br>EX | Pg #<br>Beg | Pg #<br>End | # of<br>Pages | Doc Date | DESCRIPTION OF EXHIBITS |
|---|---|---|---|---|---|
| A | 1 | 3 | 3 | 02/20/2002 | Promissory Note |
| B | 1 | 6 | 6 | 02/20/2001 | First Preferred Ship's Mortgage |
| C | 1 | 2 | 4 | 02/20/2002 | Guaranty-Jose Leopoldo Torres |
| C | 3 | 4 | 4 | 02/20/2002 | Guaranty-Jose Santos Torres |
| D | 1 | 7 | 7 | 02/20/2002 | Deed of Trust |
| E | 1 | 3 | 3 | 04/05/2003 | Modification Note |
| F | 1 | 3 | 3 | 10/09/2003 | Universal Note and Security Agreement |
| G | 1 | 3 | 3 | 02/04/2003 | Promissory Note |
| H | 1 | 9 | 9 | 02/04/2003 | Deed of Trust, Security Agreement-Financing Statement (Commercial) |

## PROMISSORY NOTE

$168,750.00

Brownsville, Texas
February 20, 2002

FOR VALUE RECEIVED, I, WE, or either of us promise to pay to the order of FIRST NATIONAL BANK at its banking house at 701 E. Levee in Brownsville, Cameron County, Texas, the sum of ONE HUNDRED SIXTY EIGHT THOUSAND SEVEN HUNDRED FIFTY AND NO/100 DOLLARS ($168,750.00), in legal and lawful money of the United States of America, with interest thereon from date of funding hereof until maturity. The interest rate shall be floating at four percent (4.00%) over the prime lending rate for large U.S. Money Center Commercial Banks as published in the Money Rates Section under the heading "prime rate," of the Southwest edition of The Wall Street Journal as it changes from day to day. The minimum interest rate on this Note during the term hereof shall be nine and one-half percent (9.50%) per annum computed on the basis of a 360-day year on the unpaid principal balance. The beginning interest rate on this Note as of the date of funding is nine and one-half percent (9.50%) per annum. This Note is payable as follows:

> Interest, only, computed at the rate above specified on the unpaid principal balance hereof, shall be due and payable on the 5th day of February, March, April, May, June and July of each calendar year during the seven year term of this Note, with the first of such installments commencing on the 5th day of April, 2002 and continuing regularly thereafter as per the payment schedule set forth herein;

> Principal payments in the amount of FOUR THOUSAND EIGHTEEN AND NO/100 DOLLARS ($4,018.00), each, plus accrued interest computed at the rate specified above on the unpaid principal balance, shall be due and payable on the 5th day of August, September, October, November, December and January of each calendar year during the seven year term of this Note, with the first of such installments commencing August 5, 2002 and continuing regularly thereafter as per the payment schedule set forth herein.

> One final payment of the entire principal balance, plus accrued unpaid interest, shall be due and payable on January 5, 2009.

Matured unpaid amounts will bear interest at the maximum rate allowed by state and federal law.

If any installment becomes overdue for more than ten (10) days, at Payee's option, five percent (5%) of the overdue installment amount will be charged in order to defray the expenses of handling the delinquent payment.

In the event of default in the payment of any installments, either principal or interest, when due, or in the actual performance of any of the "events of default" specified in said Mortgage, the holder hereof may, at its option, declare all of the remainder of said debt due and payable, and any failure to exercise said option shall not constitute a waiver of the right to exercise same at any other time. Each maker, surety, endorser, and guarantor hereon waives grace, acceleration, all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, and protest, to the extent permitted by law, and consents that the time of payment may be extended from time to time without any notice to any of them.

If suit is brought on this Note, or if it is placed in the hands of an attorney for collection, or collected through the Probate or Bankruptcy Courts, the undersigned agrees to pay the expenses of collection, including reasonable attorney's fees.

Full authority is hereby given the legal holder hereof to apply thereon any funds in the possession of such holder belonging to any obligor or endorser hereon to the payment of this note or to any other obligation owing to said Bank; or to sell any collateral security, assigned or attached, at public or private sale without notice, at any time after maturity or any time before maturity in the event the holder feels unsafe or insecure. The holder may become the purchaser at such sale.

Borrower and Lender intend that the loan evidenced by this Note (the "Loan") shall be in strict compliance with applicable usury laws. If at any time any interest contracted for, charged, or received under this Note or otherwise in connection with the Loan would be usurious under applicable law, then regardless of the provisions of this Note or the documents and instruments evidencing, securing or otherwise executed in connection with the Loan or any action or event (including, without limitation, prepayment of principal hereunder or acceleration of maturity by the Lender) which may occur with respect to this Note or the Loan, it is agreed that all sums determined to be usurious shall be immediately credited by the Lender as a payment of principal

hereunder, or if this Note has already been paid, immediately refunded to Borrower. All compensation which constitutes interest under applicable law in connection with the Loan shall be amortized, prorated, allocated and spread over the full period of time any indebtedness is owing by Borrower, to the greatest extent permissible without exceeding the applicable maximum rate allowed by applicable law in effect from time to time during such period.

IN THE EVENT ANY ITEM, ITEMS, TERMS OR PROVISIONS CONTAINED IN THIS INSTRUMENT ARE IN CONFLICT WITH THE LAWS OF THE STATE OF TEXAS, OR FEDERAL LAW, THIS INSTRUMENT SHALL BE AFFECTED ONLY AS TO ITS APPLICATION TO SUCH ITEM, ITEMS, TERMS OR PROVISIONS, AND. SHALL IN ALL OTHER RESPECTS REMAIN IN FULL FORCE AND EFFECT. IT IS UNDERSTOOD AND AGREED THAT IN NO EVENT AND UPON NO CONTINGENCY SHALL THE BORROWER, OR ANY PARTY LIABLE THEREON, OR THEREFORE, BE REQUIRED TO PAY INTEREST IN EXCESS OF THE RATE ALLOWED BY THE LAWS OF THE STATE OF TEXAS OR FEDERAL LAW, IF SUCH LAW PERMITS A GREATER RATE OF INTEREST. THE INTENTION OF THE PARTIES BEING TO CONFORM STRICTLY TO THE USURY LAWS AS NOW OR HEREAFTER CONSTRUED BY THE COURTS HAVING JURISDICTION.

This Note is secured by a $168,750.00 First Preferred Ship's Mortgage of even date herewith executed by Capi Santos, Inc. in favor of First National Bank, covering the whole of the fishing vessel EL CAPI, Official No. 576907, and is additionally secured by a First Lien Deed of Trust covering certain real property situated in Cameron County, Texas, which property is more fully described in EXHIBIT A, attached hereto and made a part hereof for all purposes.

CAPI SANTOS, INC.

By: _____
Jose Leopoldo Torres, President

**EXHIBIT "A"**
PAGE 3 OF 3

Official No.  576907

NATIONAL VESSEL DOCUMENTATION CENTER

*FIRST PREFERRED SHIP'S MORTGAGE* on the vessel(s) "EL CAPI"

RECEIVED/FILED                                              (ex FERNANDA)

21 MAR '02          10 : 58 AM

RECORDED:  BOOK *0222* PAGE *534*

*Merida Marsh*                        Dated: February 20, 2001
DOCUMENTATION OFFICER                 Amount of Mortgage:  $168,750.00
                                      Maturity Date:

is made by:              **Capi Santos, Inc.** (hereinafter called "Mortgagor")
                         2214 Ringgold Street
                         Brownsville, TX 78520

and is made to:          **FIRST NATIONAL BANK** (hereinafter called "Mortgagee")
                         701 East Levee Street
                         Brownsville, TX 78520

WHEREAS, the maker, Mortgagor herein, is the sole owner of the whole of the vessel hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by Promissory Note dated February 20, 2002 in the principal amount of ONE HUNDRED SIXTY EIGHT THOUSAND SEVEN HUNDRED FIFTY AND NO/100 DOLLARS ($168,750.00) payable to the order of Mortgagee as therein provided.

Owner has agreed to give this Mortgage as security, and has authorized and directed the execution and delivery hereof.

NOW, THEREFORE, in consideration of the premises and for other good and valuable considerations, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the oil screw named below and further described in her last marine document issued and identified as follows:

| | | |
|---|---|---|
| Name | : | **EL CAPI** |
| Home Port | : | Falling Waters, WV |
| Official No. | : | 576907 |
| Place Issued | : | National Vessel Documentation Center |

together with all masts, boilers, cables, engines, freezers, machinery, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, generators, electronics, equipment and supplies, and all fishing gear and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said definition being deemed included herein by reference.

TO HAVE AND TO HOLD all and singular the above-described vessel unto Mortgagee, its successors and assigns, forever;

PREFERRED MORTGAGE                NATIONAL VESSEL DOCUMENTATION CENTER                Page 1

*Merida Marsh   3/29/02*              **EXHIBIT "B"**
DOCUMENTATION OFFICER



PROVIDED, HOWEVER, that if Owner, its heirs, executors, administrators or its successors and assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed, construed or subject to a lien hereof for any property other than a vessel as the term is used in the Ship Mortgage Act of 1920 and the various statutes supplementary thereto and amendments thereof.

Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

### ARTICLE I. - *Particular Covenants of Owner*

Owner covenants as follows:

1.      Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document which owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of said note has been duly taken. The Owner, as a corporation, is duly organized and is and shall continue in good standing under the laws of the State of Texas and authorized to do business and in good standing in any other State wherein Owner regularly does business.

2.      Owner lawfully owns and possesses the vessel free and clear from all liens and encumbrances whatsoever except as may herein below be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever.

3.      Owner, shall, at its own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate of all vessels mortgages herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employee's compensation and/or other risks and liabilities from time to time specified by Mortgagee.  All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to mortgagee's approval. Owner shall notify and shall request underwriters to agree reasonably in advance to notify Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgage with evidence satisfactory to it that all premiums and other charges therefore have been fully paid.  Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

4.      Owner shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof, nor remove the vessel from the limits of the territorial waters of the United States save on voyages with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to establish and maintain this Mortgage as a Preferred Mortgage on said vessel.

5.      Neither vessel Owner, Agent, Master nor any Charterer of the vessel has or shall have any right, power or authority to create, incur, or permit to be imposed upon the vessel or any part thereof any lien

**EXHIBIT "B"**
PAGE 2 OF 6

whatsoever other than to the Mortgagee for crew's wages, or salvage. This provision and paragraphs 6 and 9 hereof shall be included in any charter party with respect to the vessel.

6.    Owner and any Charterer shall place and keep prominently displayed in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel any notice of this Mortgage required by Mortgagee and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel and, to Mortgagee on demand.

7.    Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. Owner shall at its own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8.    If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram or facsimile, confirmed by letter and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9.    Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's related accounts and records and, if Mortgagee requests, shall certify quarterly that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10.    Owner shall not, without the prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor, if a corporation, merge or consolidate with any other person, firm or corporation or dissolve.

11.    From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article II below.

## ARTICLE II. - *Default*

1.    In any one or more of the following events, herein termed "events of default, " viz.:

(a)    Default in the punctual payment of the principal of the note secured hereby or any instalment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8 and 10 of Article I hereof, or attempt to violate Section 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein; or

(b)    Commission of an act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto;   or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings or through prospective violation of any

PREFERRED MORTGAGE                                                                                Page 3

provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof.
then, and in every such case, Mortgagee may:

(A)     Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the highest rate of non-usurious interest permitted from day-to-day by applicable law, including as to Section 303.001, *et seq.*, Texas Finance Code (and the various statutes supplementary thereto and amendments thereof and as the same may be incorporated by reference in other Texas statutes), but otherwise without limitation, that rate based upon the "indicated rate ceiling" as defined in said Section 303.001, *et seq.,* provided, however, that interest on the debt evidenced by this mortgage shall not exceed the maximum amount of non-usurious interest that may be contracted for, or taken, reserved, charged or received under the law; (any interest in excess of that maximum amount shall be credited to on the principal of the debt or, if that has been paid, refunded);

(B)     Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(C)     Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and/or Mortgagee may become the purchaser.

For such purpose, Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in its name and stead to make all necessary transfers of the vessel thus sold.

2.     In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorized Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3.     Each and every power of remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel , and to obtain a decree ordering and directing the sale and disposition thereof.

4.     The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

**EXHIBIT "B"**
**PAGE 4 OF 6**



**FIRST**: To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its right or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 10% per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

**SECOND**: To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5.     All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at 10% per annum, and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

### ARTICLE III. - *Possession Until Default*

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

### ARTICLE IV. - *Sundry Provisions*

All covenants and agreements of Owner herein contained shall bind Owner, its heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. As used herein and when required by the context, each number (singular and plural) shall include all numbers, and each gender shall include all genders; and unless the context otherwise requires, the work "person" shall include "person, corporation, firm, partnership or association."

**FUTURE ADVANCES**: This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name by its proper officers thereunto duly authorized.

CAPI SANTOS, INC.

By: *Jose L. Torres*
Jose Leopoldo Torres, President

**EXHIBIT "B"**
**PAGE 5 OF 6**

## ACKNOWLEDGMENT

THE STATE OF TEXAS          )

COUNTY OF CAMERON          )

    This instrument was acknowledged before me on the 20th day of February by Jose Leopoldo Torres, President of Capi Santos, Inc., a Texas corporation, on behalf of said corporation.

_Christina Logan_
Notary Public, State of Texas

My Commission Expires:  6 -14- 2005

```
CHRISTINA LOGAN
Notary Public, State of Texas
My Commission Expires
June 14, 2005
```

PREFERRED MORTGAGE

**EXHIBIT "B"**
**PAGE 6 OF 6**

## GUARANTY

BROWNSVILLE                              TX
(City)                                  (State)

February 20, 2002

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce __FIRST NATIONAL BANK__ BROWNSVILLE, TX 78520 (herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of __CAPI SANTOS, INC.__

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: _____ _____ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____ _____

The term "Indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals or replacements of such obligations) for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty, or for which a guaranty is required but Borrower chooses someone other than the joint Undersigned to guaranty the obligation.

The Undersigned further acknowledges and agrees with Lender that:

**1.** No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

**2.** This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

**3.** If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

**4.** The liability of the Undersigned hereunder shall be limited to a principal amount of $ _____ (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

**5.** The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is ☐ unsecured; ☐ secured by a mortgage or security agreement dated _____ ; ☐ secured by _____ .

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

_Joseph Torres_
José Leopoldo Torres.

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

**EXHIBIT "C"**
**PAGE 1 OF 4**

ADDITIONAL PROVISIONS

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. The Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or perfor- mance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

Bankers Systems, Inc., St. Cloud, MN Form M-240    9/17/98 (For Corporate Guarantor use M-250-TX)

**EXHIBIT "C"**
**PAGE 2 OF 4**

**GUARANTY**

_____ BROWNSVILLE _____ , ____ TX ____
                         (City)                    (State)

_____ , February 20, 2002 _____

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce ___ , ___ FIRST NATIONAL BANK _____ BROWNSVILLE, TX 78520 _____ (herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of , ____ CAPI SANTOS, INC. _____

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: _____
_____ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____
_____

The term "Indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals or replacements of such obligations) for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty, or for which a guaranty is required but Borrower chooses someone other than the joint Undersigned to guaranty the obligation.

The Undersigned further acknowledges and agrees with Lender that:

**1.** No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

**2.** This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

**3.** If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

**4.** The liability of the Undersigned hereunder shall be limited to a principal amount of $ _____ (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

**5.** The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is ☐ unsecured; ☐ secured by a mortgage or security agreement dated _____ ;
☐ secured by _____

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**
THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

_____ Jose Santos Torres _____

_____

_____

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

**EXHIBIT "C"
PAGE 3 OF 4**

ADDITIONAL PROVISIONS 

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. The Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

Bankers Systems, Inc., St. Cloud, MN Form M-24          9/17/98 (For Corporate Guarantor use M-250-TX)

*(page 2 of 2)*

L.S.O.

**EXHIBIT "C"**
**PAGE 4 OF 4**

Southern Texas Title Co.

G.F. No. 2002-69100142

# DEED OF TRUST

**Date:**   February  20, 2002

**Grantor:**   Jose Santos Torres

**Grantor's Mailing Address (including county):**

>   2214 Ringgold Street
>   Brownsville, Texas 78520
>   Cameron County

**Trustee:**   Michael McCarthy

**Trustee's Mailing Address (including county):**

>   100 W.  Cano
>   Edinburg, TX 78540
>   Hidalgo County

**Beneficiary:**  First National Bank

**Beneficiary's Mailing Address (including county):**

>   701 East Levee Street., Brownsville, Texas 78520
>   Cameron County

**Note:**
Date:                      February 20, 2002
Amount:                  $168,750.00
Maker:                    Capi Santos, Inc.
Payee:                     First National Bank
Final Maturity Date:   January 5, 2009
Terms of Payment:     as therein provided

**Property (including any improvements)** :

>   See EXHIBIT A attached hereto and made a part hereof for all
>   purposes

**Prior Lien(s) (including recording information):**  None

**Other Exceptions to Conveyance and Warranty:**

Easements , rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property; taxes for the current year.

For value received and to secure payment of the note, Grantor conveys the property to Trustee in trust. Grantor warrants and agrees to defend the title to the property. If Grantor performs all the covenants and pays the note according to its terms, this deed of trust shall have no further effect, and Beneficiary shall release it at Grantor's expense.

## Grantor's Obligations

Grantor agrees to:
1. Keep the property in good repair and condition;
2. Pay all taxes and assessments on the property when due;
3. Preserve the lien's priority as it is established in this deed of trust;
4. maintain, in a form acceptable to Beneficiary, an insurance policy that:
   a. covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Beneficiary approves a smaller amount in writing;
   b. contains an 80% coinsurance clause;
   c. provides fire and extended coverage, including windstorm coverage;
   d. protects Beneficiary with a standard mortgage clause;
   e. provides flood insurance at any time the property is in a flood hazard area; and
   f. contains such other coverage as Beneficiary may reasonably require;
5. Comply at all times with the requirements of the 80% coinsurance clause;
6. Deliver the insurance policy to Beneficiary and deliver renewals to Beneficiary at least ten days before expiration;
7. Keep any buildings occupied as required by the insurance policy; and
8. If this is not a first lien, pay all prior lien notes that Grantor is personally liable to pay and abide by all prior lien instruments.

## Beneficiary's Rights

1. Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.
2. If the proceeds of the note are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.
3. Beneficiary may apply any proceeds received under the insurance policy either to reduce the note or to repair or replace damaged or destroyed improvements covered by the policy.
4. If Grantor fails to perform any of Grantor's obligations, Beneficiary may perform those obligations and be reimbursed by Grantor on demand at the place where the note is payable for any sums so paid, including attorney's fees, plus interest on those sums from the dAtes of payment at the rate stated in the note for matured, unpaid amounts. The sum to be reimbursed shall be secured by this deed of trust.

**EXHIBIT "D"**
**PAGE 2 OF 7**

5.     If Grantor defaults on the note or fails to perform any of Grantor's obligations or if default occurs on a prior lien note or other instrument, and the default continues after Beneficiary gives Grantor notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Beneficiary may:

       a.     declare the unpaid principal balance and earned interest on the note immediately due;

       b.     request Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and

       c.     purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited on the note.

**Trustee's Duties**

If requested by Beneficiary to foreclose this lien, Trustee shall:

1.     Either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;

2.     Sell and convey all or part of the property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and

3.     From the proceeds of the sale, pay, in this order:

       a.     expenses of foreclosure, including a commission to Trustee of 5% of the bid;

       b.     to Beneficiary, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

       c.     any amounts required by law to be paid before payment to Grantor; and

       d.     to Grantor, any balance.

**General Provisions**

1.     If any of the property is sold under this deed of trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.     Recitals in any Trustee's deed conveying the property will be presumed to be true.

3.     Proceedings under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.     This lien shall remain superior to liens later created even if the time of payment of all or part of the note is extended or part of the property is released.

5.     If any portion of the note cannot be lawfully secured by this deed of trust, payments shall be applied first to discharge that portion.

6.     Grantor assigns to Beneficiary all sums payable to or received by Grantor from condemnation of all or part of the property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the property. After deducting any expenses incurred, including attorney's fees, Beneficiary may release any remaining sums to Grantor or apply such sums to reduce the note. Beneficiary shall not be liable for failure to collect or to exercise diligence in collecting any such sums.

7. Grantor assigns to Beneficiary absolutely, not only as collateral, all present and future rent and other income and receipts from the property. Leases are not assigned. Grantor warrants the validity and enforceability of the assignment. Grantor may as Beneficiary's licensee collect rent and other income and receipts as long as Grantor is not in default under the note or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the note and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the note and deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the note or performance of this deed of trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may rent the property if it is vacant and collect all rent and other income and receipts. Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the property. Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the property. Beneficiary shall apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to Grantor's obligations under the note and this deed of trust in the order determined by Beneficiary. Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies. If Grantor becomes a voluntary or involuntary bankrupt, Beneficiary's filing a proof of claim in bankruptcy will be tantamount to the appointment of a receiver under Texas law.

8. Interest on the debt secured by this deed of trust shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

9. When the context requires, singular nouns and pronouns include the plural.

10. The term "note" includes all sums secured by this deed of trust.

11. This deed of trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

12. If Grantor and Maker are not the same person, the term "Grantor" shall include Maker.

13. Grantor represents that this deed of trust and the note are given for the following purposes:

**Purpose Clause:** This Deed of Trust covering the real property described in the attached Exhibit A is given as further and additional security for the repayment of that certain Promissory Note dated of even date herewith in the amount of $168,750.00, executed by Capi Santos, Inc., payable to the order of First National Bank.

When the context requires, singular nouns and pronouns include the plural.

Jose Santos Torres

# ACKNOWLEDGMENT

STATE OF TEXAS            )

COUNTY OF CAMERON    )

      This instrument was acknowledged before me on the _20_ day of February, 2002, by Jose Santos Torres.

> CHRISTINA LOGAN
> Notary Public, State of Texas
> My Commission Expires
> June 14, 2005

My Commission Expires

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:

Dennis Sanchez
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 North Expressway 83
Brownsville, TX 78521

**EXHIBIT "D"**
**PAGE 5 OF 7**

4. Legal description of land:

The North 50.00 acres of a 321.7 acre parcel out of TRACT 47, SUBDIVISION "G", SHARE 19, Espiritu Santo Grant, Cameron County, Texas;

COMMENCING at the point of intersection of the West line of TRACT 47, SUBDIVISION "G", SHARE 19, Espiritu Santo Grant, Cameron County, Texas, and the centerline of San Fernando Road;

THENCE, along the West line of said TRACT 47, North 04 degrees 30 minutes East, a distance of 17,234.15 feet to the point of beginning, being the Northwest corner of the parcel herein described;

THENCE, along the North line of said 321.7 acre parcel, South 85 degrees 30 minutes East, a distance of 1,466.50 feet to a point in the East line of said TRACT 47;

THENCE, along the East line of said TRACT 47, South 04 degrees 39 minutes 15 seconds East, a distance of 1,487.20 feet to the Southeast corner of this parcel;

THENCE, parallel with the North line of said 321.7 acre parcel, North 85 degrees 30 minutes West, a distance of 1,462.50 feet to a point in the West line of said TRACT 47;

THENCE, along the West line of said TRACT 47, North 04 degrees 30 minutes East, a distance of 1,487.20 feet to the point of beginning;

CONTAINING 50.000 acres.

EXHIBIT A

**EXHIBIT "D"**
**PAGE 6 OF 7**

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS
On: Mar 28,2002  at  11:02A

Document Number:        00016282

                 By
Lettie Perez
Joe G Rivera, County Clerk
Cameron County

**MODIFICATION NOTE**

*239595*

**DATE:** April 5, 2003          **ORIGINAL NOTE DATE:** February 20, 2002

**MAKER:** Capi Santos, Inc.

**MAKER'S MAILING ADDRESS:** 2214 Ringgold St., Brownsville, TX 78520

**PAYEE:** First National Bank

**PLACE FOR PAYMENT:** 701 E. Levee St., Brownsville, Texas 78520

**ORIGINAL NOTE AMOUNT:** $168,750.00          **PRINCIPAL BALANCE:** $144,642.00

**ANNUAL INTEREST ON UNPAID PRINCIPAL FROM DATE:** Interest will accrue at the rate per year, based on a 360 day year, that will be the lesser of (1) four percent (4.0%) in excess of the Prime Interest Rate, adjusted daily without notice to Maker, based on the Prime Interest Rate then in effect, or (2) the maximum non-usurious rate of interest permitted by applicable law. At no time will the interest rate be less than Nine and One-half percent (9.50%).

The Prime Interest Rate means the annual rate of interest identified as the "prime rate" in the "Money Rates" column published in the <u>Wall Street Journal</u>. If the published rate is expressed on the applicable date as a range, the prime rate for purposes of this note will be the average between the high and low of that range. If the <u>Wall Street Journal</u> ceases to publish a prime rate, Lender may refer to another similar source to identify the prime rate on corporate loans at large United States money center commercial banks and apply that rate.

**ANNUAL INTEREST RATE ON MATURED, UNPAID AMOUNTS:** The maximum legal rate allowed by State and Federal law.

**TERMS OF PAYMENT:**

Accrued interest shall be due and payable on August 5, 2003.

Payments of $4,018.00 principal, plus interest, shall be due and payable monthly on the 5th day of each month for the months of August through January each year beginning September 5, 2003, and continuing regularly and monthly through January 5, 2004. Payments of interest only shall be due and payable monthly on the 5th day of each month for the months of February through July each year, beginning February 5, 2004 and continuing regularly and monthly through July 5, 2004. Said payments will continue in a like manner, monthly and regularly as set out until January 5, 2009; at that time all principal and accrued interest shall be due and payable.

Interest computed on the unpaid principal balance is payable monthly as it accrues on the same dates as and in addition to the installments of principal.

1

**EXHIBIT "E"**
**PAGE 1 OF 3**

**PREFERRED MORTGAGE:**

>**Date:**  February 20, 2002 (the date on the mortgage is erroneously shown as February 20, 2001, when in fact it should be 2002)
>**Owner:**  Capi Santos, Inc.
>**Mortgagee:** First National Bank
>**Vessel:**  El Capi (ex Fernanda)
>**Official No.:**  576907
>**Recorded in:**  Book: 02-22, Page 524

The note is additionally secured by a deed of trust dated February 20, 2002, from Jose Santos Torres to Michael McCarthy, Trustee, recorded in Volume 7865, Page 167, Official Records, Cameron County, Texas which covers 50.00 acres described on Exhibit A.

Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above.  All unpaid amounts shall be due by the final scheduled payment date.

If Maker defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to it, and the default continues after Payee gives Maker notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Payee may declare the unpaid principal balance and earned interest on this note immediately due.  Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, and notices of protest, to the extent permitted by law.

If suit is brought on this Note, or if it is placed in the hands of an attorney for collection, or collected through the probate or Bankruptcy Courts, the undersigned agrees to pay the expenses of collection, including attorney's fees of Fifteen Percent (15%) of the principal and interest then due on this Note.

Interest on the debt evidenced by this note shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded.  On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded.  This provision overrides other provisions in this and all other instruments concerning the debt.

This note is given in renewal and modification, but not in extinguishment of the note dated **February 20, 2002** described herein.

2

Each Maker is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

If the holder of this note has not received the full amount of any installment payment at the end of the ten (10) days after it is due, Maker agrees to pay a late charge to the note holder. The amount of the late charge will be **five percent (5%)** of the amount of the overdue installment payment, not to exceed $750.00. Maker agrees to pay the late charge promptly. The late charge will be charged only one time with respect to any late installment payment.

**THIS NOTE AND THE INSTRUMENTS BEING EXECUTED ALONG WITH IT REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Capi Santos, Inc.

By: _____
Jose Leopoldo Torres, President

Agreed to:

_____
Jose Santos Torres
Grantor in Deed of Trust pledged
As additional collateral

3

| | | |
|---|---|---|
| JOSE SANTOS TORRES<br>2214 RINGGOLD<br>BROWNSVILLE, TX 78520 | FIRST NATIONAL B___<br>100 W. CANO<br>P.O. BOX 810<br>EDINBURG, TX 78539 | PORT:105481<br>Loan Number <u>266587</u><br>Date <u>10-09-2002</u><br>Maturity Date <u>04-09-2004</u><br>Loan Amount $ <u>2,650.00</u><br>Renewal Of ___<br>SSN <u>464851985</u> |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of <u>TWO THOUSAND SIX HUNDRED FIFTY AND</u>
<u>NO/100</u> _____ Dollars $ <u>2,650.00</u>

☒ **Single Advance:** I will receive all of this principal sum on <u>10-09-2002</u> _____ . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
  Conditions: The conditions for future advances are _____
  _____
  _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum principal sum more than one time. This feature is subject to all
other conditions and expires on _____ .

☐ **Closed End Credit:** You and I agree that I may borrow (subject to all other conditions) up to the maximum principal sum only one time.

**INTEREST:** I agree to pay interest on the outstanding principal balance from <u>10-09-2002</u> _____ at the rate of _____ <u>18.000</u> %
per year until <u>04-09-2004</u> _____ .

☐ **Variable Rate:** This rate may change as stated below.
  ☐ **Index Rate:** The future rate will be _____ the following index rate: _____
  _____
  _____

  ☐ **Ceiling Rate:** The interest rate ceiling for this note is the _____ ceiling rate announced by the Credit Commissioner from time to time.
  ☐ **Frequency and Timing:** The rate on this note may change as often as _____ .
    A change in the interest rate will take effect _____
  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
    _____ %. The rate may not change more than _____ % each _____ .
  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  ☐ The amount of each scheduled payment will change.     ☐ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a <u>ACTUAL/360</u> _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
  ☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
  ☒ at a rate equal to <u>HIGHEST RATE ALLOWED BY LAW</u>

☒ **LATE CHARGE:** If a payment is made more than <u>10</u> days after it is due, I agree to pay a late charge of <u>5.000% OF THE LATE AMOUNT WITH A</u> .
<u>MAX OF $750.00</u>

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☒ are not included in the principal
amount above: <u>COMMITMENT FEE $26.50 + ADMINISTRATIVE FEE $75.00 = $101.50</u> _____

**PAYMENTS:** I agree to pay this note as follows:
<u>18 MONTHLY PAYMENTS OF $169.41 BEGINNING 11-09-2002.</u>
_____
_____
_____
_____
_____

**PURPOSE:** The purpose of this loan is <u>WORKING CAPITAL</u> _____ .
**ADDITIONAL TERMS:**

## SECURITY

**SECURITY INTEREST:** I give you a security interest in all of the Property described below that I own or have sufficient rights in which to
transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property.
"Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of
title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon
the sale, lease, license, exchange, or other disposition of the Property, any rights and claims arising from the Property; and any collections
and distributions on account of the Property.

☐ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to,
  payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens)
  which I have by law or agreement against any account debtor or obligor.

☐ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are
  raw materials, work in process, or materials used or consumed in my business.

☐ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm
  machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment
  described in a list or schedule I give to you, but such a list is not necessary to create a valid security interest in all of my equipment.

☐ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records
  that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

UNIVERSAL NOTE AND SECURITY AGREEMENT
Expert™ © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UNS-LAZ-TX 11/26/2001 V03.00     *J.S.T*     (page 1 of 3)

**EXHIBIT "F"**
**PAGE 1 OF 3**

☐ **General Intangibles:** All general intangibles, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use my name.

☐ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☐ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ **Specific Property Description:** The Property includes, but is not limited by, the following:

    1998 FORD RANGER VIN - 1FTYR10U6WUB11896

If this agreement covers timber to be cut, enter real estate description and record owner information: _____

_____

The Property will be used for a ☐ personal ☒ business ☐ agricultural ☐ _____ purpose.
Borrower/Owner State of organization/registration (if applicable) TX

## ADDITIONAL TERMS OF THE SECURITY AGREEMENT

**GENERALLY** - This agreement secures this note and any other debt I have with you, now or later. However, it will not secure any other debts if you fail with respect to such other debts, to make any required disclosure about this security agreement or if you fail to give any required notice of the right of rescission. If property described in this agreement is located in another state, this agreement may also, in some circumstances, be governed by the law of the state in which the Property is located.

**NAME AND LOCATION** - My name indicated on page 1 is my exact legal name. If I am an individual, my address is my principal residence. If I am not an individual, my address is the location of my chief executive offices or sole place of business. If I am an entity organized and registered under state law, my address is located in the state in which I am registered, unless otherwise indicated on page 2. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - I represent that I own all of the Property, or to the extent this is a purchase money security interest I will acquire ownership of the Property with the proceeds of the loan. I will defend it against any other claim. Your claim to the Property is ahead of the claims of any other creditor. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position. I will not use the Property for a purpose that will violate any laws or subject the Property to forfeiture or seizure.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these records at any reasonable time. I will prepare any report or accounting you request, which deals with the Property.

I will keep the Property in my possession and will keep it in good repair and use it only for the purpose(s) described on page 3 of this agreement. I will not change this specified use without your express written permission. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

I will keep the Property at my address listed on page 1 of this agreement, unless we agree I may keep it at another location. If the Property is to be used in another state, I will give you a list of those states. I will not try to sell the Property unless it is inventory or I receive your written permission to do so. I will sell the Property I will have the payment made payable to the order of you and me.

You may demand immediate payment of the debt(s) if the debtor is not a natural person and without your prior written consent; (1) a beneficial interest in the debtor is sold or transferred, or (2) there is a change in either the identity or number of members of a partnership, or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation.

I will pay all taxes and charges on the Property as they become due. You have the right of reasonable access in order to inspect the Property. I will immediately inform you of any loss or damage to the Property.

If I fail to perform any of my duties under this security agreement, or any mortgage, deed of trust, lien or other security interest, you may without notice to me perform the duties or cause them to be performed. Your right to perform for me shall not create an obligation to perform and your failure to perform will not preclude you from exercising any of your other rights under the law of this security agreement.

**PURCHASE MONEY SECURITY INTEREST** - For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the Purchase Money Loan, and (b) payments on the Purchase Money Loan will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items of collateral were acquired or if acquired at the same time, in the order selected by you. No security interest will be terminated by application of this formula. "Purchase Money Loan" means any loan the proceeds of which, in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancing of such loan.

**PAYMENTS BY LENDER** - You are authorized to pay, on my behalf, charges I am or may become obligated to pay to preserve or protect the secured property (such as property insurance premiums). You may treat those payments as advances and add them to the unpaid principal under the note secured by this agreement or you may demand immediate payment of the amount advanced.

**INSURANCE** - I agree to buy insurance on the Property against the risks and for the amounts you require and to furnish you continuing proof of coverage. I will have the insurance company name you as loss payee on any such policy. You may require added security if you agree that insurance proceeds may be used to repair or replace the Property. I will buy insurance from a firm licensed to do business in the state where you are located. The firm will be reasonably acceptable to you. The insurance will last until the Property is released from this agreement. If I fail to buy or maintain the insurance (or fail to name you as loss payee) you may purchase it yourself.

**WARRANTIES AND REPRESENTATIONS** - If this agreement includes accounts, I will not settle any account for less than its full value without your written permission. I will collect all accounts until you tell me otherwise. I will keep the proceeds from all the accounts and any goods which are returned to me or which I take back in trust for you. I will not mix them with any other property of mine. I will deliver them to you at your request. If you ask me to pay you the full price on any returned items or items retaken by myself, I will do so. You may exercise my rights with respect to obligations of any account debtors, or other persons obligated on the Property, to pay or perform, and you may enforce any security interest that secures such obligations.

If this agreement covers inventory, I will not dispose of it except in my ordinary course of business at the fair market value for the Property, or at a minimum price established between you and me.

Any person who signs within this box does so to give you a security interest in the Property described on page 1 and this page. This person does not promise to pay the note. "I" as used in this security agreement will include the borrower and any person who signs within this box.

Date _____

Signed _____

*J.S.T* (page 2 of 3)

Expert© ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UNS-LAZ-TX  11/26/2001

**EXHIBIT "F"**
**PAGE 2 OF 3**

If this agreement covers farm products, I will provide you, upon request, a written list of the buyers, commission merchants or selling agents to, or through whom I may sell my farm products. In addition to those parties named on this written list, I authorize you to notify at your sole discretion any additional parties regarding your security interest in my farm products. I remain subject to all applicable penalties for selling my farm products in violation of my agreement with you and the Food Security Act. In this paragraph the terms farm products, buyers, commission merchants and selling agents have the meanings given to them in the Federal Food Security Act of 1985.

If this agreement covers chattel paper or instruments, either as original collateral or proceeds of the Property, I will note your interest on the face of the chattel paper or instruments.

**DEFAULT** - I will be in default on this security agreement if I am in default on any note this agreement secures or if I fail to keep any promise contained in the terms of this agreement. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or to make possible the production of an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

**REMEDIES** - If I default, you have all of the rights and remedies provided in the note and under the Uniform Commercial Code. You may require me to make the secured property available to you at a place which is reasonably convenient. You may take possession of the secured property and sell it as provided by law. The proceeds will be applied first to your expenses and then to the debt. I agree that 10 days written notice sent to my last known address before the sale or mail will be reasonable notice under the Uniform Commercial Code. My current address is on page 1.

**PERFECTION OF SECURITY INTEREST** - I authorize you to file a financing statement covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining possession of or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code.

## ADDITIONAL TERMS OF THE NOTE

**DEFINITIONS** - As used on pages 1 and 2, "IX" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - The law of the state of Texas will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**PAYMENTS** - Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued and unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal sum outstanding at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to in this note (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE** - The index will serve only as a device for setting the interest rate on this note. You do not guarantee by selecting this index, or the margin, that the interest rate on this note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers.

**POST MATURITY RATE** - For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS** - If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph on page 2.

**MULTIPLE ADVANCE LOANS** - If this is a multiple advance loan, you and I expect that you will make more than one advance of principal.

this is closed end credit, repaying it in the future will not entitle me to additional credit.

**SET-OFF** - I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of the accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right to set-off.

**DEFAULT** - I will be in default on this loan and any agreement securing this loan if any one or more of the following occurs:
(1) I fail to perform any obligation which I have undertaken in this note or any agreement securing this note;
(2) you, in good faith, believe that the prospect of payment or the prospect of my performance of any other obligations under this note or any agreement securing this note is impaired; or
(3) I fail to pay, or keep any promise, on any debt or agreement I have with you unless otherwise prohibited by law.

If any of us are in default on this note or any security agreement, you may exercise your remedies against any or all of us.

**REMEDIES** - If I am in default on this note, you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of my debt under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "SET-OFF" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.
(6) You may make use of any remedy given to you in any agreement securing this note.

By selecting any one or more of these remedies you do not give up your right to use later any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to consider later the event a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES** - I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER** - I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest);
(3) give notice that amounts due have not been paid (notice of dishonor);
(4) give notice of intent to accelerate; or
(5) give notice of acceleration.

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT** - I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit to notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION** - I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

---

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT, ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

---

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE AND SECURITY AGREEMENT (INCLUDING THOSE ON PAGES 1 AND 2).** I have received a copy of this note and security agreement on today's date.

JOSE SANTOS TORRES

SIGNATURE FOR LENDER

CARLOS M. BODDEN

Experts © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UNS-LAZ-TX 11/26/2001 *(page 3 of 3)*

# 280599

# Promissory Note
### (Commercial-----Fixed Rate)

**Date:**  February 4, 2003

**Borrower:**    Jose Santos Torres and Ramon Barroso

**Borrower's Mailing Address:** 2214 Ringold Street, Brownsville, Texas  78520

**Lender:**    FIRST NATIONAL BANK

**Place for Payment:** 701 E. Levee, Brownsville, Texas  78520

**Principal Amount:**    Twenty-Five Thousand and 00/100 Dollars

**Annual Interest Rate (based on an actual number of days elapsed/360 day year):**    11.00%

**Maturity Date:** February 4, 2008

**Annual Interest Rate on Matured, Unpaid Amounts:** Highest rate allowed by law.

**Terms of Payment (principal and interest):** Principal and interest shall be due and payable in monthly installments of $346.53 each, payable on the 4th day of each and every calendar month, beginning on March 4, 2003, and continuing regularly thereafter until February 4, 2008 on which last mentioned date the entire unpaid balance of principal and interest then owing shall become immediately due and payable.

Interest shall be calculated on the unpaid principal to the date of each installment. Each payment will be credited first to the accrued interest and then to reduction of principal.

If Lender or its successor has not received the full amount of any installment payment at the end of the tenth (10th) day after it is due, Borrower agrees to pay a late charge to Lender.  The amount of the late charge will be five percent (5%) of the amount of the overdue installment payment, not to exceed $750.00.  Borrower agrees to pay the late charge promptly.  The late charge will be charged only one time with respect to any late installment payment.

## BALLOON WARNING

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND ANOTHER LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

**Security for Payment:** This note is secured by all deeds of trust, security agreements, collateral assignments and other liens and security now or at any time hereafter executed by Borrower to Lender or any holder of this note, by any rights of subrogation accruing to the Lender or holder by reason of any indebtedness owing to Lender or any holder of this note by Borrower or the discharge by the proceeds advanced under the terms of this note, and by rights of offset as to any funds or property of Borrower from time to time on deposit with or in possession of Lender or any holder against amounts due on this note, including without limitation the following:

Vendor's lien and superior title retained in a deed from Janet Dwire Mathis to Jose Santos Torres dated February 4, 2003 and by a Deed of Trust of even date from Jose Santos Torres to M.V. MCCARTHY, trustee, both of which cover the following real property: Lot Twenty-Two (22), BAREDA-JARDIN SUBDIVISION PHASE I, Cameron County, Texas, according to the map or plat thereof recorded in Cabinet 1, Pages 1347B-1348A, Map Records, Cameron County, Texas.

Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. After maturity, Borrower promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts.

If Borrower defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to this note, Lender may declare the unpaid principal balance, earned interest, and any other amounts owed on the note immediately due. Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

Borrower also promises to pay reasonable attorney's fees and court and other costs if this note is placed in the hands of an attorney to collect or enforce the note. These expenses will bear interest from the date of advance at the Annual Interest Rate on Matured, Unpaid Amounts. Borrower will pay Lender these expenses and interest on demand at the Place for Payment. These expenses and interest will become part of the debt evidenced by the note and will be secured by any security for payment.

**Prepayment:** Borrower may prepay this note in any amount at any time before the Maturity Date without penalty or premium.

**Application of Prepayment:** Prepayments will be applied to installments on the last maturing principal, and interest on that prepaid principal will immediately cease to accrue.

Interest on the debt evidenced by this note will not exceed the maximum rate or amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the Principal Amount or, if the Principal Amount has been paid, refunded. On any acceleration or required or permitted prepayment, any excess interest will be canceled automatically as of the acceleration or prepayment or, if the excess interest has already been paid, credited on the Principal Amount or, if the Principal Amount has been paid, refunded. This provision overrides any conflicting provisions in this note and all other instruments concerning the debt.

Each Borrower is responsible for all obligations represented by this note.

**EXHIBIT "G"**
**PAGE 2 OF 3**

When the context requires, singular nouns and pronouns include the plural.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

_____                    _____
Jose Santos Torres                                 Ramon Barroso

C:\Master Forms\Master Note - Fixed.wpd      (K)

**EXHIBIT "G"**
**PAGE 3 OF 3**

Rio Grande Valley Abstract Co., Inc.
GF # 2020 62963 Bro

# Deed of Trust

## Security Agreement - Financing Statement

### (Commercial)

#### Terms

**Date:**   February 4, 2003

**Grantor:**   Jose Santos Torres, not joined by his spouse herein as this property is not part of their homestead

**Grantor's Mailing Address:** 2214 Ringold Street, Brownsville, Texas  78520

**Trustee:**   M. V. McCARTHY

**Trustee's Mailing Address:**

> P.O. Box 810/100 W. Cano
> Edinburg, TX. 78539
> Hidalgo County, Texas

**Lender:**   FIRST NATIONAL BANK

**Lender's Mailing Address:**  701 E. Levee, Brownsville, Texas  78520

**Note**

> Date:   February 4, 2003
> Original principal amount:       Twenty-Five Thousand and 00/100 Dollars
> Borrower:      Jose Santos Torres and Ramon Barroso
> Lender: FIRST NATIONAL BANK
> Maturity date:   February 4, 2008
> Terms of Payment:      As provided in the note.

**Property (including any improvements):**  Lot Twenty-Two (22), BAREDA-JARDIN SUBDIVISION PHASE I, Cameron County, Texas, according to the map or plat thereof recorded in Cabinet 1, Pages 1347B-1348A, Map Records, Cameron County, Texas.

> To the extent they are located thereon, the Property also includes (1) all goods that are or will be fixtures and that are or will be located on the premises, including without limitation all systems, devices, machinery, apparatuses, equipment, fittings, appliances and fixtures of every kind and nature whatsoever now or hereafter located on the Property, including, but not limited to, all electrical, anti-pollution, heating, lighting, laundry, incinerating, power, air-conditioning, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, communication, garage and cooking systems, devices, machinery, apparatuses, equipment, fittings, appliances and fixtures; and (2) all engines, pipes, pumps, tanks, motors, conduits, ducts, compressors and switchboards, and all storm doors and windows, dishwashers, attached cabinets and partitions not included in the Property due to their status as removable fixtures.

**Prior Lien:**   NONE

1

For value received and to secure payment of the Note, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Note and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

To the extent allowed by law, this conveyance is also made in trust to secure payment of all other present and future debts that Grantor/Borrower may owe to Lender, regardless of how the other debt is incurred or evidenced, it being contemplated that Lender may lend additional sums to Grantor or may acquire and become the owner and holder of other indebtedness of Grantor from time to time, but shall not be obligated to do so. Payment on all present and future debts of Grantor/Borrower to Lender will be made at P.O. Box 810, Edinburg, Texas 78540-0810 in Hidalgo County, Texas, and the debts will bear interest as provided in notes or other evidences of debt that Grantor/Borrower will give Lender. This conveyance is also made to secure payment of any renewal or extension of any present or future debt that Grantor/Borrower owes Lender, including any loans and advancements from Lender to Grantor/Borrower under the provisions of this deed of trust. When Grantor/Borrower repays all debts owed to Lender, this deed of trust will terminate only if Lender releases this deed of trust at the request of Grantor. Until Lender releases it, this deed of trust will remain fully in effect to secure future advances and debts, regardless of any additional security given for any debt and regardless of any renewals, extensions, or partial releases.

**Clauses and Covenants**

**A.    Grantor's Obligations**

Grantor agrees to-
1.    keep the Property in good repair and condition;
2.    pay all taxes and assessments on the Property before delinquency;
3.    defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;
4.    maintain, in a form acceptable to Lender, an insurance policy that-
    a.    covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Lender approves a smaller amount in writing;
    b.    contains an 80 percent coinsurance clause;
    c.    provides fire and extended coverage, including windstorm coverage;
    d.    protects Lender with a standard mortgage clause;
    e.    provides flood insurance at any time the Property is in a flood hazard area; and
    f.    contains such other coverage as Lender may reasonably require;
5.    comply at all times with the requirements of the 80 percent coinsurance clause;
6.    deliver the insurance policy to Lender within ten days of the date of this deed of trust and deliver renewals to Lender at least fifteen days before expiration;
7.    obey all laws, ordinances, and restrictive covenants applicable to the Property;
8.    keep any buildings occupied as required by the insurance policy; and
9.    if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments.

**B.    Lender's Rights**
1.    Lender may appoint in writing a substitute trustee, succeeding to all rights and responsibilities of Trustee.
2.    If the proceeds of the Note are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

2

**EXHIBIT "H"**
**PAGE 2 OF 9**

3.      Lender may apply any proceeds received under the insurance policy either to reduce the Note or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the insurance proceeds available to Grantor for repairs.

4.      Notwithstanding Note terms to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor under the Note or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender under the Note, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

5.      If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

6.      If there is a default on the Note or if Grantor fails to perform any of Grantor's obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may-

   a.       declare the unpaid principal balance and earned interest on the Note immediately due;
   b.       direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and
   c.       purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Note.

7.      Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

## C.      Trustee's Rights and Duties

If directed by Lender to foreclose this lien, Trustee will-

1.      either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

2.      sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Lien and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

3.      from the proceeds of the sale, pay, in this order-

   a.       expenses of foreclosure, including a reasonable commission to Trustee;
   b.       to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;
   c.       any amounts required by law to be paid before payment to Grantor; and
   d.       to Grantor, any balance; and

4.      be indemnified by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

## D.      General Provisions

1.      If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.      Recitals in any trustee's deed conveying the Property will be presumed to be true.

3.      Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

3

**EXHIBIT "H"**
**PAGE 3 OF 9**

4.    This lien will remain superior to liens later created even if the time of payment of all or part of the Note is extended or part of the Property is released.

5.    If any portion of the Note cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

6.    Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Note. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

7.    Grantor assigns to Lender absolutely, not only as collateral, all present and future rent and other income and receipts from the Property. Grantor warrants the validity and enforceability of the assignment. Grantor may as Lender's licensee collect rent and other income and receipts as long as Grantor is not in default under the Note or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the Note and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the Note and deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the Note or performance of this deed of trust, Lender may terminate Grantor's license to collect rent and other income and then as Grantor's agent may rent the Property and collect all rent and other income and receipts. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Lender's rights and remedies and then to Grantor's obligations under the Note and this deed of trust in the order determined by Lender. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies. If Grantor becomes a voluntary or involuntary debtor in bankruptcy, Lender's filing a proof of claim in bankruptcy will be deemed equivalent to the appointment of a receiver under Texas law.

8.    Grantor represents and warrants and covenants and agrees that (i) Grantor has not used and will not use and, to the best of Grantor's knowledge, no prior owner or current or prior tenant, subtenant, or other occupant of all or any part of the Property has used or is using hazardous material (as that term is hereinafter defined) on, from or affecting the Property in any manner that violates any laws pertaining to hazardous materials applicable to Grantor or to the Property; (ii) to the best of Grantor's knowledge, no hazardous materials have been disposed of on the Property nor have any hazardous materials migrated onto the Property, in either event in violation of any laws pertaining to hazardous materials applicable to Grantor or to the Property; and (iii) Grantor will not permit or suffer any such violation of any laws pertaining to hazardous materials applicable to Grantor or to the Property. In the event that any investigation, site monitoring, containment, clean-up, removal, restoration or other remedial work of any kind or nature (hereinafter referred to as the "remedial work") is required under any laws pertaining to hazardous materials applicable to Grantor or to the Property, because of, or in connection with, the current or future presence, suspected presence, release or suspected release of a hazardous material in or about the air, soil, ground water, surface water or soil vapor at, on, about, under or within the Property (or any portion thereof), Grantor shall within the time periods required by the applicable laws pertaining to hazardous materials, commence and thereafter diligently prosecute to completion, all such remedial work. All remedial work shall be performed by contractors reasonably approved in advance by Lender and under the supervision of a consulting engineer reasonably approved by Lender. All costs and expenses of such remedial work shall be paid by Grantor including, without limitation, Lender's reasonable attorneys' fees and costs incurred in connection with monitoring or review of such remedial work. In the event Grantor shall fail to timely prosecute to completion such remedial work, Lender may, but shall not be required to, cause such remedial work to be performed and all costs and expenses thereof or incurred in connection therewith, shall be immediately due and payable by Grantor to Lender and

4

shall become part of the indebtedness. Grantor shall provide Lender with prompt written notice (a) upon Grantor's becoming aware of any release or threat of release of any hazardous materials upon, under or from the Property in violation of any laws pertaining to hazardous materials applicable to Grantor or to the Property, (b) upon Grantor's receipt of any notice from any federal, state, municipal or other governmental agency or authority in connection with any hazardous materials located upon or under or emanating from the Property; and (c) upon Grantor's obtaining knowledge of any incurrence of expense, for which Grantor or the Property could be liable, by any governmental agency or authority in connection with the assessment, containment or removal of any hazardous materials located upon or under or emanating from the Property.

9.    ARBITRATION. THE PARTIES FURTHER AGREE AS FOLLOWS: (a)    UPON WRITTEN NOTICE BY LENDER OR BORROWER TO THE OTHER, ANY AND ALL CONTROVERSIES BETWEEN THE PARTIES SHALL BE RESOLVED BY ARBITRATION IN ACCORDANCE WITH THE COMMERCIAL ASSOCIATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION IN EFFECT AT THE TIME OF FILING, UNLESS THE COMMERCIAL ARBITRATION RULES CONFLICT WITH THIS PROVISION, AND IN SUCH EVENT THE TERMS OF THIS PROVISION SHALL CONTROL. ANY ARBITRATION HEREUNDER SHALL BE BEFORE AT LEAST THREE ARBITRATORS ASSOCIATED WITH THE AMERICAN ARBITRATION ASSOCIATION AND SELECTED IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION. THE AWARD OF THE ARBITRATORS, OR A MAJORITY OF THEM, SHALL BE FINAL, AND JUDGEMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION. ERRORS OF LAW SHALL BE AN ADDITIONAL GROUND FOR VACATUR OF AN AWARD RENDERED PURSUANT TO THIS PROVISION.

(b) ARBITRABLE DISPUTES INCLUDE ANY AND ALL CONTROVERSIES OR CLAIMS BETWEEN THE PARTIES OF WHATEVER TYPE OR MANNER, INCLUDING WITHOUT LIMITATION, ANY CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY PROPOSED OR ACTUAL LOAN OR EXTENSION OF CREDIT, ALL PAST, PRESENT AND/OR FUTURE AGREEMENTS INVOLVING THE PARTIES, ANY TRANSACTIONS BETWEEN OR INVOLVING THE PARTIES, AND/OR ANY ASPECT OF ANY PAST OR PRESENT RELATIONSHIP OF THE PARTIES, WHETHER BANKING OR OTHERWISE, SPECIFICALLY INCLUDING ANY ALLEGED TORT COMMITTED BY ANY PARTY.

(c) DEPOSITIONS MAY BE TAKEN AND OTHER DISCOVERY OBTAINED IN ANY ARBITRATION UNDER THIS PROVISION. WITHIN THIRTY (30) DAYS OF THE DATE A RESPONSIVE PLEADING IS FILED IN AN ARBITRATION PROCEEDING HEREUNDER, ALL PARTIES SHALL SERVE ON ALL OTHER PARTIES AN INITIAL DISCLOSURE AS WOULD BE REQUIRED BY RULE 26, FEDERAL RULES OF CIVIL PROCEDURE.

(d) FOR THE PURPOSES OF THIS PROVISION, "THE PARTIES" MEANS GRANTORS, BENEFICIARY, TRUSTEE, LENDER AND EACH OF THEM, AND ALL PERSONS AND ENTITIES SIGNING THIS AGREEMENT OR ANY OTHER AGREEMENTS, SECURITY INSTRUMENTS, AND/OR GUARANTEES EXECUTED HERETOFORE OR CONTEMPORANEOUSLY WITH AND AS PART OF THE SAME TRANSACTION WITH THIS AGREEMENT. "THE PARTIES" SHALL ALSO INCLUDE INDIVIDUAL PARTNERS, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS AND/OR REPRESENTATIVES OF ANY PARTY TO THOSE DOCUMENTS, AND SHALL INCLUDE ANY OTHER OWNER AND HOLDER OF THE LOAN DOCUMENTS.

(e) THE PARTIES SHALL HAVE THE RIGHT TO INVOKE SELF-HELP REMEDIES (SUCH AS SET-OFF, NOTIFICATION OF ACCOUNT DEBTORS, SEIZURE AND/OR FORECLOSURE OF COLLATERAL, AND NON-JUDICIAL SALE OF PERSONAL PROPERTY AND REAL PROPERTY COLLATERAL) BEFORE, DURING OR AFTER ANY ARBITRATION AND/OR PERFORMANCE, RECEIVER, INJUNCTION OR RESTRAINING ORDER, AND SEQUESTRATION) BEFORE OR AFTER

5

ANY ARBITRATION. THE PARTIES NEED NOT AWAIT THE OUTCOME OF THE ARBITRATION BEFORE USING SELF-HELP REMEDIES. USE OF SELF-HELP OR ANCILLARY AND/OR PROVISIONAL JUDICIAL REMEDIES SHALL NOT OPERATE AS A WAIVER OF EITHER PARTY'S RIGHT TO COMPEL ARBITRATION.

(f) THE PARTIES AGREE THAT ANY ACTION REGARDING ANY CONTROVERSY BETWEEN THE PARTIES SHALL EITHER BE BROUGHT BY ARBITRATION, AS DESCRIBED HEREIN, OR BY JUDICIAL PROCEEDINGS, BUT SHALL NOT BE PURSUED SIMULTANEOUSLY IN DIFFERENT OR ALTERNATIVE FORUMS. A TIMELY WRITTEN NOTICE OF INTENT TO ARBITRATE PURSUANT TO THIS AGREEMENT STAYS AND/OR ABATES ANY AND ALL ACTION IN A TRIAL COURT, SAVE AND EXCEPT A HEARING ON A MOTION TO COMPEL ARBITRATION AND/OR THE ENTRY OF AN ORDER COMPELLING ARBITRATION AND STAYING AND/OR ABATING THE LITIGATION PENDING THE FILING OF THE FINAL AWARD OF THE ARBITRATORS.

(g) ANY AGGRIEVED PARTY SHALL SERVE A WRITTEN NOTICE OF INTENT TO ARBITRATE TO ANY AND ALL OPPOSING PARTIES WITHIN 360 DAYS AFTER DISPUTE HAS ARISEN. A DISPUTE IS DEFINED TO HAVE ARISEN ONLY UPON RECEIPT OF SERVICE OF JUDICIAL PROCESS OR OF A COMPLAINT IN ARBITRATION. FAILURE TO SERVE A WRITTEN NOTICE OF INTENT TO ARBITRATE WITHIN THE TIME SPECIFIED ABOVE SHALL BE DEEMED A WAIVER OF THE AGGRIEVED PARTY'S RIGHT TO COMPEL ARBITRATION OF SUCH CLAIM. THE ISSUE OF WAIVER PURSUANT TO THIS AGREEMENT IS AN ARBITRABLE DISPUTE.

(h) ACTIVE PARTICIPATION IN PENDING LITIGATION DURING THE 360 DAY NOTICE PERIOD, WHETHER AS PLAINTIFF OR DEFENDANT, IS NOT A WAIVER OF THE RIGHT TO COMPEL ARBITRATION. ALL DISCOVERY OBTAINED IN THE PENDING LITIGATION MAY BE USED IN ANY SUBSEQUENT ARBITRATION PROCEEDING.

(i) THE PARTIES FURTHER AGREE THAT (i) NO ARBITRATION PROCEEDING SHALL BE CERTIFIED AS A CLASS ACTION OR PROCEED AS A CLASS ACTION, AND (ii) NO ARBITRATION PROCEEDING HEREUNDER SHALL BE CONSOLIDATED WITH, OR JOINED IN ANY WAY WITH, ANY OTHER ARBITRATION PROCEEDING.

(j) ANY ARBITRATOR SELECTED SHALL BE KNOWLEDGEABLE IN THE SUBJECT MATTER OF THE DISPUTE. EACH OF THE PARTIES SHALL PAY AN EQUAL SHARE OF THE ARBITRATION COSTS, FEES, EXPENSES, AND OF THE ARBITRATORS' FEES, COSTS, AND EXPENSES.

(k) ALL STATUTES OF LIMITATIONS WHICH WOULD OTHERWISE BE APPLICABLE SHALL APPLY TO ANY ARBITRATION PROCEEDING HEREUNDER AND THE COMMENCEMENT OF ANY ARBITRATION PROCEEDING TOLLS SUCH LIMITATIONS.

(l) IN ANY ARBITRATION PROCEEDING SUBJECT TO THIS PROVISION, THE ARBITRATORS, OR MAJORITY OF THEM, ARE SPECIFICALLY EMPOWERED TO DECIDE (BY DOCUMENTS ONLY, OR WITH A HEARING, AT THE ARBITRATORS' SOLE DISCRETION) PRE-HEARING MOTIONS WHICH ARE SUBSTANTIALLY SIMILAR TO PRE-HEARING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY ADJUDICATION.

(m) THIS ARBITRATION PROVISION SHALL SURVIVE ANY TERMINATION, AMENDMENT, OR EXPIRATION OF THE AGREEMENT IN WHICH THIS PROVISION IS CONTAINED, UNLESS ALL OF THE PARTIES OTHERWISE EXPRESSLY AGREE IN WRITING.

(n) THE PARTIES ACKNOWLEDGE THAT THIS AGREEMENT EVIDENCES A TRANSACTION INVOLVING INTERSTATE COMMERCE IN THAT THE FUNDS WHICH MAY BE ADVANCED OR COMMITTED UNDER THIS AGREEMENT ARE DERIVED FROM INTERSTATE AND/OR INTERNATIONAL FINANCIAL MARKETS. THE FEDERAL ARBITRATION ACT SHALL GOVERN THE INTERPRETATION, ENFORCEMENT, AND PROCEEDINGS PURSUANT TO THE ARBITRATION CLAUSE OF THIS AGREEMENT.

6

(o) THE ARBITRATORS, OR A MAJORITY OF THEM, SHALL AWARD ATTORNEY'S FEES AND COSTS TO THE PREVAILING PARTY PURSUANT TO THE TERMS OF THIS AGREEMENT.

(p) VENUE OF ANY ARBITRATION PROCEEDING HEREUNDER SHALL BE IN HIDALGO COUNTY, TEXAS.

10.    Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

11.    In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

12.    When the context requires, singular nouns and pronouns include the plural.

13.    The term *Note* includes all extensions and renewals of the Note and all amounts secured by this deed of trust.

14.    Grantor agrees to furnish on Lender's request evidence satisfactory to Lender that all taxes and assessments on the Property have been paid when due.

15.    While any portion of the indebtedness secured hereby remains unpaid, Grantor agrees to furnish to Lender, the following financial information: (a) Annual operating statements on the Property in such form and containing such information as Lender may reasonably request; (b) Annual financial statements sworn to by Grantor, prepared in accordance with the Generally Accepted Accounting Principles; (c) Copy of Grantor's income tax return; (d) Tenant listing and rent roll on the Property. All financial information, other than tax returns, shall be provided within 90 days of each fiscal year end. Tax Returns shall be provided by May 1st of each year, or if filing the return is extended, within 15 days of the extended filing date.

16.    Grantor agrees that Beneficiary may, at any time while any of the indebtedness secured hereby remains unpaid (but not more often than annually), obtain, at Grantor's expense, an appraisal of the property herein described from an appraiser acceptable to Beneficiary. Grantor shall pay the expense of such appraisal to Beneficiary upon demand. The amount to be reimbursed will be secured by this Deed of Trust.

17.    If Grantor transfers any part of the Property without Lender's prior written consent, Lender may declare the debt secured by this deed of trust immediately payable and invoke any remedies provided in this deed of trust for default.

18.    In addition to creating a deed of trust lien on all the real and other property described above, Grantor also grants to Beneficiary a security interest in all property other than the realty pursuant to the Texas Uniform Commercial Code. In the event of a foreclosure sale under this deed of trust, Grantor agrees that all the property may be sold as a whole at Beneficiary's option and that the property need not be present at the place of sale.

19.    This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

20.    If Grantor and Borrower are not the same person, the term Grantor includes Borrower.

21.    Grantor and each surety, endorser, and guarantor of the Note waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

22.    Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if this deed of trust is placed in the hands of an attorney for enforcement.

23.    If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

7

**EXHIBIT "H"**
**PAGE 7 OF 9**

24.    Grantor represents that this deed of trust and the Note are given for the following purposes:

To the extent of $7,416.34 debt evidenced by the Note is in part payment of the purchase price of the Property; the debt is secured by this Deed of Trust and by a Vendor's Lien on the Property, which is expressly retained in a Deed of even date. This Deed of Trust does not waive the vendor's lien, and the two liens and the rights created by this instrument shall be cumulative. Beneficiary may elect to foreclose under either of the liens without waiving the other or may foreclose under both. The deed is incorporated into this Deed of Trust.

The Note represents $17,583.66 in cash that Beneficiary advanced to Grantor on this day at Grantor's request and that Grantor acknowledges receiving.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.



_____
Jose Santos Torres

STATE OF TEXAS

COUNTY OF CAMERON

    This instrument was acknowledged before me on ____February 6____, 2003, by Jose Santos Torres.

VICTORIA MUNOZ
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 08-03-2006

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:

FIRST NATIONAL BANK                    GF 202062963
100 W. CANO/P.O. BOX 810
EDINBURG, TX 78540-0810                C:\Master Forms\Master Deed of Trust.wpd        (K)

**EXHIBIT "H"**
**PAGE 8 OF 9**

BK     Vol     Pg
922  OR   8809   275

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS
On: Mar 07,2003  at  04:45P

Document Number:          00011922

By
Part Time
Joe G Rivera, County Clerk
Cameron County

